We will hear argument next this morning in Case 13-9972, Rodriguez v. United States. Mr. O'Connor. Mr. Chief Justice, and may it please the Court, the big issue that starts in this case is whether, after completing the task related to a traffic stop, whether an officer, without individualized suspicion, can hold the driver for a dog sniff. Specific question in this case is whether Officer Struble was entitled to piggyback an already completed traffic offense with probable cause onto that piggyback – onto that traffic offense for an investigation of Mr. Rodriguez involving nothing more than a hunch. That is the question of the case. But that remains – that wasn't reached by the Court of Appeals. The district court, as you pointed out, rejected the argument that there was probable cause, saying it's nothing more than a hunch. But that was not reviewed by the Court of Appeals, so that would still be open. The decision of the Court of Appeals, Your Honor, absolutely. That was a de minimis ruling. They did not reach the question as to whether there was reasonable suspicion. And left it just based on their ruling of – of whether, in fact, this was a de minimis action. Roberts. Counsel, do you concede that this would be all right if the dog sniff took place during the traffic stop? In other words, let's say there were, you know, two policemen there already. One says, I'm going to go write you a ticket. And while that's taking place, the other policeman walks around with the dog. No problem with that? There'd be no problem, Mr. Chief Justice, if, in fact, all of that was done before the traffic ticket was written. If, in fact, the dog was written or taken around the car prior to the completion of the traffic stop and the ticket, then, of course, it would be open. All right. Mr. O'Connor, Mr. O'Connor, it's frequent that a policeman, when he stops somebody for a broken taillight or whatever, will conduct some other inquiries. You know, where are you going? Ask a lot of questions. He will check whether the person is driving a stolen car, whether the person is properly licensed. All of that has nothing to do with the broken taillight. And yet that's permitted, right? Just, you know, what are you trying to do? Would it be permitted if he did it after he wrote the ticket? At that point in time, no. He would not. Is that right? He can only do that before he writes the ticket. If, assuming that was the case. What if he's not giving a ticket? He's just going to give them a warning. And he says to them, you know, you should have done that, and you went a little bit over the line. Be careful next time. By the way, let me see your driver's license. That would be bad. Yes, Your Honor, that would be bad. It would be, because that would be part of the stop. All of those questions would be, once the stop is finished, then he should be allowed to go, no matter what the question was. Is it your argument that as soon as all of the steps that must be taken in connection with the traffic stop are completed, then the stop must end? Or is it that nothing more can be done after the ticket is issued? In other words, is it the length of time, or is it the formal act of giving the ticket or the warning that cuts things off? Your Honor, it is the formal act. Once the act of the traffic stop is done, which would be the reason, which would be the purpose for the stop, once that is done, that is the, the, so and so. Kennedy, that that is done is not clear. Two questions. In Justice Scalia's hypothetical, the officer said, I'm not going to give you a ticket, but I just want to ask you a few questions. It seems to me that under your argument, those questions are impermissible because he's made his decision, he's not going to give a ticket. On the other hand, as Justice Alito indicates, suppose that he said, now, I've finished your ticket, but before I give it to you, I'm going to go back to the police car and check to see if there are warrants. Is that all right? If it is the completion of the ticket. He says, I've finished writing the ticket, I've folded my notebook, I'm going to give you this ticket, but I'm first going to go back and see if my radio check has come in to verify your license plate. Is that permitted? If it is the end of the traffic stop, it is not. Sotomayor, but first of all, this is, these are hypotheticals that have a wrong presumption. Okay? There are certain tasks involved in giving a traffic ticket, correct? Yes, Your Honor. Yes. And those include checking for warrants, checking for tickets on the car, checking   So it's a task involving identity, asking questions about that, and generally with identity, it also has to do with where are you going and where are you coming from, correct? Yes, Your Honor. And conducting an officer's task also. Right. I'm sorry. Justice Sotomayor. I didn't hear that. My question for you, and it can't be the formal act of writing the ticket. It has to be the formal, it has to be the acts related to the mission. When you finish those, that's when the stop ends. Yes, Your Honor. That is exactly right. Yes, but you've tied it to just writing it, handing over the ticket, but, or you're not even doing that. You're saying just writing the ticket, which is crazy. If, in fact, that's the impression that I gave, that is wrong. It's not the formal handing of the ticket is when the stop is complete. Once the justification for the stop and the purpose is complete, the ticket is done, whether it is a warning, whether it is handed to them, at some point in time, the ticket is done, and that's the investigation. Justice Sotomayor's question assumes, and you apparently embrace the assumption, that checking on whether you have a proper license, checking whether the car is stolen, all of these things are embraced within the mission when the only basis for the stop is you have a broken taillight. How does that have anything to do with the broken taillight? Those are things, Your Honor, that have been accepted as part of the mission. I see. Well, and maybe dog sniffing should be, too, right? Dog sniffing is accepted so long as it's done before what? Before completion of? Before completion of the mission. Which includes not just the broken taillight, but also inquiring into your license, inquiring into prior arrests. That's all part of the mission? Yes, Your Honor. Why don't you make the dog sniff part of the mission? And that will solve the problem. Part of the mission when you stop somebody is not just the broken taillight, but, you know, whether the car is stolen, whether you have drugs on the car. So let's bring in the dog and do the car sniff. I mean, you're willing to expand the mission to everything up to, but not beyond, the dog sniff. Why do you do that? You expand the mission, Your Honor, for everything that comes within the tasks that are part of the traffic stop. The dog sniff, it's a broken taillight. That's the only thing that comes within the traffic stop. All the rest is added on. And you let them add it on. Why don't you let them add on the dog sniff? You do so long as it occurs before the ticket is delivered. Is that right? You do if it's done before the traffic stop is done. Ticket would not be a formal part of the mission. But you see, the problem is, how do you define the traffic stop? And you've already indicated the traffic stop can include some of the questions. You're really, I think, much better off if you stick with the formal rule. Once you hand the ticket, that's the end of it. Then you have a formal rule. You're not arguing that, and that leads us open to the question, why can't we include the dog sniff? Well, the dog sniff is a policy question, so answer it as a policy question. Don't tie it to the stop or not. Tie it to something else. As a policy question, if you could end it with the handing of the ticket, that would be acceptable. If we tie the traffic ticket as the end of the justification for the stop, then what do you think? Alitoson I mean, if we hold that it's okay to have a dog sniff so long as it's before the ticket is issued, then every police officer, other than those who are uninformed or incompetent, will delay the handing over of the ticket until the dog sniff is completed. So what does that accomplish? I mean, it's great for your client, but what does it do for the law? Your Honor, I think what it does, first, if you have officers that wait, if that's the question, Your Honor, if they wait for the pocket, put the ticket in the pocket of the dog. If we adopt a formal rule, that's one of the options, a formal rule. Once you hand over the ticket, that's it. You can't do anything more. The person has to be allowed to go. All right? Is that your argument or not? Yes. That is your argument? Yes. And what does that accomplish? What it accomplishes is the enforcement of the Fourth Amendment. Once the stop is done, once the purpose is done, the justification is done, the person can be freed of it. But the question is, is this very, just the easiest thing to get around by simply saying, with the sequence in which I will do this, I won't think of issuing the ticket until I've had the dog sniff. So that's the problem. What are you accomplishing? Well, I mean, say we make the handing over the ticket the end of the legitimate stop. Yes. Well, then the police can just say, I'm going to defer that a few minutes until the dog sniff occurs. It just seems that you're not going to accomplish any protection for individuals if that's your position, that it's just a question of when you do it. So if you do it during the stop, before the ticket issue, it's okay. And if you do it two minutes after, it's not okay. Your Honor, it is okay when the traffic stop is done, when the mission is complete. You can't possibly mean that. You can't possibly mean that. The stopping officer says, yeah, I'm done. I got my ticket here. It's all written out. However, before I give it to you, I want to have a dog sniff. I'm going to call in to headquarters. They're going to send down a dog. It's going to take maybe 45 minutes. You just sit there because the traffic stop is not terminated until I give you your ticket. You going to allow that? Well, again, if I – if the formal – the formal handing of the ticket is not the end. In your example, Your Honor, you're not going to get it. My example, he hasn't turned over the ticket yet. He says, I'm not going to give you the ticket until the dog comes, and that's going to take 45 minutes. That's okay. No. The traffic stop is done. Well, he hands the ticket to him at that point in time. He – it's the only reason. He has not handed the ticket over. He's kept the ticket. And the reason that he has kept the ticket is for the dog to come. Yeah. And – but that is past the – that is past the traffic stop. The traffic stop is done. You're not – you're not applying a formal test. I thought you were saying it's a formal test. When you deliver the ticket is the termination point. But that's not right. No. That's – no. The formal – the formal – So what is the test? The formal test is – How long a normal traffic stop would take? The formal test – no, Your Honor, that would not be the case at all. The formal test is when the mission has been accomplished. If you pull someone over for the traffic offense, and if, in fact, you do all of the tasks that are necessary to complete it, when it is completed, it is done. What if the officer says, I need to think about this for a while? Well, who's – The officer says, I need to think about this for a while. I'm going to go back. I'm going to ponder how long it took you. I'm going to think about other tickets I've given in the past. And, you know, the dogs are going to be here in 8 minutes. I think I need about 10 minutes to think about it. Is that – is that okay? Since he has not – hasn't written a ticket. He waits, you know, until he's thought about it for a while to write the ticket. No, Your Honor, that's – that's not okay at all. What has to happen is the officer must be diligent. He must be diligent going towards the investigation of the traffic stop. Again, I think we're putting – and if I'm the one that – that started misleading of this, I apologize. Handing of the ticket is not the end all. Handing of the ticket is when the tasks are done. I got pulled over for a driving offense, then it – then it's over. In your example, Mr. Chief Justice, if he's pondering, then he's not being diligent. If he's pondering and not being diligent, then he's not being diligent. See, we ponder all the time, and we think we're being diligent. Pondering is not diligent. Unless the pondering is to avoid the diligence. And that would be the question. The question, then, is if – if, in fact, the officer is pocketing the ticket, he said, I'm going to wait until the dog comes. You are then extending the time of the stop, and it violates the rule that you have to stop. You know, I really like this. Roberts, I've answered this already, but I'm not sure. Can he ask for the registration? Usually, people have told me when you're stopped, the officer says, license and registration. Is that okay? I've had – I've had friends that say the same thing, Mr. Chief Justice. Of course that's okay. What about the registration is pertinent to the traffic stop? Well, what's pertinent about it is part of the traffic stop is the vehicle itself as well. Not only do you have the driver, but you're looking at the driver, the driver's history, the car. All of those things are part and parcel to the task towards the offense. If you saw the car swerve, what does that have to do with the car? The car was just doing what the driver did. I mean, I don't see why you need the registration of the car. What you can do – no, Your Honor, I think, Mr. Chief Justice, I think you do. I think that is part of investigating the – the traffic offense. Those are things that have been accepted and – accepted might not be the right word – adopted as things that you can do in a traffic stop. Now, there are certainly times when you go beyond the traffic stop. And you have the Johnson case. If, in fact, you go beyond the – the traffic stop, even measurably beyond it, then you have violated the – the driver's rights, and it is unconstitutional. The question in that case occurred during the traffic stop. Mr. O'Connor, is – is this particular traffic violation, was that an arrestable offense? No. Under – under Nebraska law, no, Your Honor, it was not. It's a traffic infraction. Because if it was an arrestable offense, they could arrest the driver and then impound the car and do an inventory search. If it was an arrestable offense, yes, Your Honor, I think that's correct. But you say it's not an arrestable. It is not. And regardless, I mean, he was – see, here's the – here's the – what we do know about this case. Not only do we know the mission is done because of the tasks that were completed, you have the officer that says, I've done the tasks, everything that needs to be done with this offense, or with this – or with this traffic stop is finished. It's finished. There's no question about that. Then there's no more justification. In order for the driver to be continued to be detained, there must be new justification or consent, which you did not get in this case. But you must let the driver go because you are – at the end, you are finished with the traffic stop. You are finished with the reason that he was detained in the first place, the purpose, going across the fog light. Sotomayor, can I just ask you a simple question? Yes, we've permitted a dog search, but in the cases that we have, Sobolos and others, it was done simultaneous with the traffic stop, correct? Correct. You said in your brief, a dog sniff is not a police entitlement to which the Fourth Amendment applies. Is there a line that we should draw at how long citizens should be kept by the side of the road? I think that the – All right. So announce what that line is. That's what I think everybody's been asking you. The line is when – I can start off with perhaps the Johnson case again. When the stop is basically – when the stop is done, people – Why don't you just do a simple test? If you're going to do a – if you're going to do a stop, you can't reasonably extend or pass the time it takes to deal with a ticket, correct? I think – That would be the simple rule? I think that the simple rule, if I may propose one, is the same one that Professor Lefebvre has proposed about a traffic stop. For a simple stop, basically what you do is the officer sees the infraction, the officer pulls the person over, the officer tells the person what the infraction is, he does the license, he does the registration, runs the car, then when it's done, he gives him the ticket, the warning ticket. That is the end of the traffic stop. There's no other reason to hold the person after that point in time. You say he runs the car, he puts the license plate into the radio and waits for the report from the station as to whether or not the license is okay? Yes, Your Honor. Alitoson Why is that part of the mission and the dogsniff is not? That's the question. If you're not going to have a formal rule, you have to explain why somebody has pulled over for a broken taillight, why adding any time to the stop in order to do a records check is part of the mission, but the dogsniff is not. I mean, I can understand the rule. You pull somebody over for a broken taillight. Maybe you get the registration to make sure you write out the ticket to the right person, then you give them the ticket and that's it. No time for the records check. What does the records check have to do with pulling somebody over for a broken taillight? I can understand that. But is that your argument? Well, if that is part of what the courts have accepted as part of the stop, you are looking at the vehicle itself. Now, the dog, Your Honor, is different. The dog is different because the dog is not a task related, what the courts have accepted as related to a traffic stop. It is a collateral offense or a collateral event where you have the dog sniff and do nothing more than look for drugs, nothing more than look for drugs. I don't want to interrupt. Your answer is that the courts have accepted that you can prolong this a little bit to do a records check. But then you have to explain why the dogsniff is different. You're not prolonging it, Your Honor, to do a records check. That is part of the stop. As long as the person, the officer, is diligently working towards the mission. Why is it part? As the questioning has suggested, it's unrelated to the traffic stop. You're looking to see if this person has a record committed of other crimes, for example. What has that got to do with? Whatever the traffic infraction, not stopping at a stop sign. What has checking to see if the defendant has a criminal record got to do with that? That is something that the courts are looking at as to whether that is something that you should be able to do. The courts have generally accepted that. What I can come back, in this particular case, is not something that happened in this case, because it is clear-cut. Now, that issue is extremely important, but it's something that I don't think can be done today. He can – I mean, one reason I think they do the records check, the officer needs to know who he's dealing with. I think one of the higher incidences of when officers are shot or wounded is when they make a traffic stop. And so if you run the registration, you see it's a stolen car. You need to know that before you go back and deal with the driver and other occupants. What if the police officer determines that he's concerned about that, either as a general matter or as a specific matter? He takes the license and registration, but he's not going to go back to the car until he has backup, okay? So he calls ahead and said, you know, I would like backup, and the person says, you know, it's going to take 25 minutes, and he says fine. Is that a legitimate reason the traffic stop isn't over because he's – he doesn't want to go back because he's alone and he doesn't know who these guys are? That is a legitimate reason. So he can call back. Now, okay, what if the backup is a canine unit? The canine unit gets there. You've told us it hasn't been prolonged. And as the officer goes up to give him the warning, the dog walks around the car. Is that all right? I think that that is all right. The reason that it's all right is because you have the diligence of the officer. Officer safety is certainly a reason to ask for backup. Once the backup is there, the officer then completes the traffic offense. Everything is done. And before that, the dog has run around. I don't think that there is a problem with that, because the delay was for a legitimate reason, not putting the ticket in your pocket. If there are no further questions, I will request the remaining for rebuttal. Thank you. Thank you, counsel. Ms. Anders. Mr. Chief Justice, and may it please the Court. In order to avoid the arbitrary results that Petitioner's bright-line rule would impose on traffic stops, a dog sniff conducted during a traffic stop should be subject to a reasonableness analysis. How long is reasonable? You keep saying in your papers you have to look at the totality of the circumstances. But I don't know what that means. I think that keeping me most of the time, and Chief, I've been stopped. Keeping me past. So have I. Keeping me past giving me the ticket is annoying as heck. Whether it's 5 minutes, 10 minutes, 45. But how do you define de minimis? What are the circumstances that would make any difference in holding somebody 5 minutes or 45? It all has to do with your needs, not the passenger's needs. Well, if I could explain what the reasonableness approach is. First of all, it's not a strict de minimis approach that focuses just on the amount of time in isolation. It's a question about the objective reasonableness of the length of the stop. And we think that it's. So if somebody is going to their home and search their home, is that okay? The reasonable length of the stop is the amount of time that it. A stop is reasonable, even if it includes a dog sniff, if its duration is within the amount of time, the range of reasonably, of reasonable routine traffic stops that don't involve dog sniffs. So we're talking about a length of time that is still tethered to the traffic violation purpose of the stop. So in addition to not exceeding the sort of heartland of a routine traffic stop duration, the officer also has to be reasonably diligent, which means that he needs to be focused overall on. Scalia, What's the heartland of routine traffic stops? You have a minute criterion. What is it? Half an hour? I think within the universe of routine traffic stops, there's a range. I mean, the courts have applied a reasonableness analysis to routine traffic stops for 30 years. Scalia, What is it? What is it? I want to know what it is so I can complain when it's longer. It depends on the circumstances that are presented during the stop. So for instance, a stop might reasonably take longer if there are more people in the car, so that the officer has to check the criminal histories of more people in the car. He has to be more worried about officer safety. Scalia, How many minutes when there are three people in the car? I mean, you've got to pick a minute. Don't you have to pick a minute sooner or later to decide these cases? No, I think in every case, the court has to look to the totality of the circumstances presented. And pick a minute. And so it's not possible to pick a minute in the abstract, because even, you know, as this Court said. Scalia, What do you need? There are three people in the car, and he stopped for a broken taillight. Well, as we said in our brief, that when that situation occurs, courts have upheld stops of up to, you know, 35 minutes, something like that. Scalia, I have a great idea. Why don't we say, taking your test, that the stop, you can do it, you know, whatever is normal there, but it cannot be prolonged more than the time reasonably required to complete the mission, which happens to be giving a temporary traffic ticket. Or we could say, it cannot last longer than is necessary to effectuate the purpose of the stop. What an original idea I have had. It happens to be language from two cases that we've already said. And are you saying anything different? I don't think so. If so, what? And if not, since this is a case where apparently the lower courts have said it did last longer than was reasonably necessary because the policeman said, that's why I, I mean, in effect said, according to the judge, I called the dog after the stop was over, or something like that. We cite those two cases, say those are the tests, affirm or reverse, I guess, QED. Goodbye, we say to all the litigants, and hope you are happy. Now, when, when I hear you say that, it sounds, what you've said, it sounds that's what you think we should do. But I suspect you don't, but I want to know why. We think the amount of time reasonably required to complete the traffic stop is, is the duration it takes, looking to other similar stops, it's the duration that it would take. Is the time necessary to effectuate the purpose of the stop, or it is the time that is reasonably required to complete the mission? We can't do better than that. How can we? We are not traffic policemen, and our experience on stops comes from, unfortunately, being the stopee rather than the stopper. And a stop can fall within that reasonably required time frame, even if it includes some delay. Okay, so that's the end of this. Of course, if it's in the middle of it, you call the dog and so forth, but you can't prolong it beyond the time reasonably necessary. Now, I've said that several times. I think you may agree with that. And then if you do agree with it, here it was prolonged more than reasonably necessary. At least that's what they found. End of case. Now. I think looking to whether the dog sniff occurs before or after the traffic ticket is given will accord dispositive significance to the officer's sequencing decision when he gives the ticket. As I understand Petitioner's position, it is that if in the midst of a traffic stop that, say, lasts 10 minutes, the officer spends one minute on a dog sniff, that is okay, even though it has incrementally increased the length of the stop. But then you have that very same stop where the officer gives the ticket first and then adds a minute for a dog sniff. Breyer. There are a lot of problems. There are a lot of problems with any rule based on reasonableness, and of course there will be difficult problems. But here we've said twice that once the stop is over, i.e., goes beyond the time reasonably necessary to complete the mission, you cannot call in the dogs. And before, you can. Now, of course there will be anomalies in that respect. Of course there can be bad faith exercises. Of course there can be confusion as to which is which. But that's inevitable in the situation, and we can't do anything about it. Now, what can you suggest that would just help us and show we could do something about it? Well, I think it's a pretty serious anomaly when the person doesn't do it. Well, it may be, but I mean, I'm asking you, what is it that we could say better than the language of the two cases? I mean, I'm not denying there is a problem with what you just said. There is. You might decide to do this beforehand and do all kinds of excuses. You know, people every day of the week make up reasons. But if you want a better rule than the one laid down in the two cases, what? Well, I think there are two ways to understand the language in the two cases you're referring to in Cabalas. One is, as I think you're suggesting, that the time reasonably required to complete the traffic violation means that time and nothing else, so that any delay attributable to a dog sniff as opposed to a hunger. No, I don't think you have to do that. I mean, you know, you get into arguments about it, was it reasonably necessary or not. It's that it cannot be prolonged beyond the time what is reasonably necessary. It is difficult sometimes to decide what is reasonably necessary. Once we accept that a stop can be incrementally prolonged for purposes of a dog sniff, if that dog sniff occurs during the stop, so that the officer is doing nothing but that dog sniff, he's adding a 1-minute to a 10-minute dog sniff, then the question will be whether that 11-minute total stop is reasonable. That's the exact same intrusion that would occur if the officer decided to do all of the traffic-related tasks first. That took 10 minutes, and then he did a dog sniff immediately afterwards. That's an 11-minute traffic stop. It's exactly the same intrusion, and it should be subject to a reasonableness analysis. Kagan, if I could just get a little clarification on your argument, if I understand what you've been saying, you are accepting the idea, aren't you, that the dog sniff is something that's extraneous to the mission of the stop. Is that correct? We're not suggesting that it is an ordinary incident of the traffic stop that you'd have to do a traffic stop. It's not an ordinary incident. But since the Court said in Cabalas that a dog sniff is permissible to perform in stops sometimes, we think that the analysis as to when it is permissible is necessary. Right. I'm not getting there yet. I just want to understand, because some of the questions have focused on, like, what is a stop, what's the mission of the stop, what's entailed in a normal stop. And you're not contesting that a dog sniff is not something that's entailed in a normal stop, even though there might be occasions where you can do a dog sniff attendant to a stop. I think that's right. But as other members of the Court have suggested, once there's probable cause to stop someone for a traffic stop. What about this evidence? Suppose you have a police department that it's in a small State. Every police cruiser has a K-9. And they make it just as common to, you know, to check on the license plate, call in to see if the person has any prior convictions. So also they always take the dog around the car. It's a routine part of a traffic stop. It would be permissible for them to do that, as long as in each stop it fell within the reasonable amount of time that it would take for a routine traffic stop. And including the time for the dog sniff. I think we would not include the time for a dog sniff in the baseline that we would be using. Why not? Why not? Well, I think it's. That's what a routine traffic stop is for that jurisdiction. Well, I think our point is that once there's probable cause to perform a set of legitimate investigative inquiries, then if the officer can do other investigations during that time, such as a dog sniff, or unrelated questionings, then it ought to be constitutionally reasonable to do that. And that's what actually the courts of appeals, for the most part, have held with respect to the related questionings. Breyer, but that's where I thought the position that I've tried to say, let me state it more clearly, I think. It is unlawful to have the dog sniff where the dog sniff unreasonably prolongs the stop. Is that does — is that okay if I write with the government, if I write those words in an opinion? That's right. But we don't think that a dog sniff performed right after the ticket per se unreasonably prolongs the stop. And if I could give you a hypothetical that. Ah. Well, how, if the ticket writing is over and there is nothing else to do, and the policeman says, hey, this is over, at that point, has it not unreasonably prolonged the stop if the sniff takes place afterwards? I don't think so. I mean, just imagine. Because it takes only two minutes, and that's not unreasonable, right? That's right. And it doesn't move on. The dog walks around the car for two minutes. So it's only a violation of the Fourth Amendment for two minutes. Right? I mean, the reason I don't understand you, I don't understand when you're talking about prolonging the stop. Are you talking about here's the amount of time that you are needed for the traffic stop, and you're allowed to prolong it sometime after that? Or is it that the sniff is part of the time for the stop, so you're not prolonging it at all? You're including it. You're wrapping it up in the stop. No, I think we admit that the dog sniff can prolong the traffic stop, that it is not a routine part of every single traffic stop. We're not trying to make that argument. But I do think that just because a dog sniff prolongs a traffic stop by some, you know, incremental amount of time doesn't mean that the stop is per se unreasonable. It can prolong it a little bit. It can prolong it a reasonable amount of time. And what else?  I'm not sure that's a traffic violation. What else? Could the police say, I've taken the time I've needed to look into this traffic violation, but we're in a high crime neighborhood, so I'd like to keep this driver a bit longer so I can just interrogate him about what other things he might have been doing, and it's not going to take, it's going to take eight minutes. But traffic's up, you've taken care of that, and now instead of having the dog come, the police officer says, I have a few questions I want to ask you. Yes, the Court held in Arizona v. Johnson that questioning about an unrelated matter is not, like a dog sniff, it is not an independent Fourth Amendment intrusion. So, again, I think the only interest at stake from the individual's point of view is the interest against unreasonable delay. And since that is the case, I think that the officer can incrementally extend the stop so long as the ultimate duration of the stop is not longer. Breyer, it may not seem as if we are, but to me we are. Now, what about this? You say, I see your problem is, you say, well, it can't prolong the stop, the traffic stop, more than reasonably, you know, it has to be, take the time reasonably required to complete the mission. That's what it says, complete the mission. So we have the intermission prolongation, which has to be reasonable, and we have complete the mission. So complete the mission. Once the mission is completed, it's over. That's language from the opinion, too. Complete, complete, goodbye, over. At that point, it becomes a violation of the Fourth Amendment. And that will lead to arbitrary results. And if I could just give you one scenario where that could occur and then tell you why practically officers often end up or need to do the dog sniff after the tickets. So the hypothetical that I propose is that if you imagine you have two officers conducting a stop, and the first officer is explaining the ticket and what's happening with the ticket to the person, to the driver. While he's doing that, the second officer is performing the dog sniff around the car. If the officer who's explaining the ticket ends first and the dog sniff takes another 30 seconds, I don't think there's any reason to say that that stop, which maybe lasts a total of 10 minutes, has gone on for longer than reasonably required to complete the traffic mission. Sotomayor, I have a real fundamental question, because this line drawing is only here because we've now created a Fourth Amendment entitlement to search for drugs by using dogs whenever anybody stops, because that's what you're proposing. And is that really what the Fourth Amendment should permit? I don't think it's an entitlement, Justice Sotomayor. I think that once the Court said in Cabales that it is permissible in some circumstances to perform a dog sniff during a traffic stop, then. Sotomayor, so why don't we keep it cabin to Cabales, which is when it's being done simultaneously with writing the ticket. If it's not, then it's unlawful. Well, because that leads to arbitrary results. As I was explaining with Justice Breyer, I think in that hypothetical, if you resolve The Fourth Amendment is arbitrary by its nature. It says you can't search unless you have probable cause to search. Well, Petitioner's rule would say that the hypothetical I propose is impermissible in every circumstance, that even a 30-second extension of a short traffic stop is always unreasonable, even if that stop falls within the amount of time it usually takes to do routine traffic stops. Ms. Anders, I'm sorry, please. And the officer is reasonably diligent with respect to the traffic mission. You know, I think I read Cabales differently than you. Here's what I think Cabales agrees with you on and here's what I think Cabales doesn't. Cabales definitely agrees with you on that a dog sniff is not part of the traffic stop. So I think that you and Cabales are definitely in the same place there. And Cabales definitely says that even though a dog sniff is not part of the mission of the traffic stop, we're going to allow a dog sniff if the dog sniff doesn't extend the traffic stop. It's like, you know, there are two officers or there's some other reason why you're not being detained a moment longer because of the dog sniff. And Cabales basically says, sure, no harm, no foul on that one, right? But then you're saying Cabales gives you this extra leeway to detain people even though it is longer than an ordinary traffic stop would take. I think that's just not right. I mean, I think that reasonableness language in Cabales is all about it's an extra limitation, the Court says. It says, like, don't think just because this officer was really slow and it took a really long time to do the traffic stop and he was able because of that to get another officer in and do a dog sniff and it was all with – it's like an additional limitation that, no, you have to be diligent and you have to be reasonable in the way you conduct the traffic stop. And if you're not, the dog sniff can't come in even though it was conducted during the time the traffic stop occurred. But it's – that's an additional constraint. It's not some kind of extra leeway for the police officers to do things outside the bounds of the traffic stop itself. Well, I think that's one way to read Cabales's language. The reason we don't think that that's the right way is that we know after Cabales that a dog sniff is not an independent Fourth Amendment intrusion. It's not a search. We also know that it doesn't impose – it doesn't violate any independent scope limitation on traffic. Yes, it's not a search, but the theory of Cabales and of all of our questions is that you can't – and of all of our cases is that you really can't detain somebody if you don't have some kind of objective, reasonable basis for doing so. And that any detention, and, you know, it might be 10 minutes, it might be 5 minutes, or it might be 2 minutes, without that kind of basis is a Fourth Amendment violation. But once the individual is already being detained for a traffic stop and probable cause, I think the implication of Cabales is that if the dog sniff takes any time, then the intrusion we're talking about is the incremental delay. It's a temporal intrusion. And so from the individual's perspective, her interest in – it's the same in avoiding the dog sniff as it is in avoiding a warrant check or any other incident of a stop. It's the interest against unreasonable delay. And so because that's the case, we think that delays attributable to dog sniffs should be treated like delays attributable to a warrant check or anything else. They should be treated in a reasonable synopsis. Roberts. You say you've used several times the phrase incremental. In my – I sense that it being less than, right? I mean, if the actual traffic stop is 5 minutes, then you wouldn't say a 15-minute dog sniff is incremental. So does the dog sniff have to be less than the traffic stop? I think that one of the things that courts should look to is the relative proportion of time to the dog sniff to the rest of the stop. And the reason I think that's relevant is that the officer – this is the case in routine traffic stops as well – the officer has to be reasonably diligent. And so I think reasonably diligent can take into account whether the officer is predominantly working on resolving the traffic violation. But if he's able to do a dog sniff within a reasonable amount of time and not have the traffic stop exceed the duration of a reasonable routine traffic stop, then he ought to be able to do that. And I – Roberts Is that almost always the case, that the dog sniff is going to take longer than the traffic stop? I mean, I would assume so. The officer says license or registration, goes back, checks them, comes back and gives you a ticket. Dog sniff is something else altogether, assuming the dog's there. They've got to get the – you know, walk around the car. If you're – if it really has to be incremental, I'm not sure it's hardly ever going to be reasonable. Well, the dog sniff itself, I think, is a matter of seconds, I think, in the cases. It takes anywhere from 30 seconds to 90 seconds to do a dog sniff. So it is something that can be an incremental delay, as I was discussing with you prior. If the dog happens to be there, I guess. Well, even in a situation where the dog isn't there already, I mean, if the officer calls for the dog early enough or the dog arrives. I mean, there are – there are situations in the cases, we cited this in footnote 20 of our brief, where you have the dog arriving just as the officer is about to give the ticket. So that is a scenario that can occur. I do think there are several reasons why an officer may want to give the ticket first and then do the dog sniff immediately, and one of them is officer safety. I think everything that an officer does during a traffic stop, how he orders his tasks and how he performs them, is infused with officer safety considerations. And so it can be a safer thing to ask to use the ticket, the need to explain the ticket, as a non-confrontational way of getting the ticket for every car. Breyer, what about another aspect, as I was seeing it the way Justice Kagan described it? And one virtue of that, now, but you may not think it does work, is administrative. What do you tell the police department? You say, well, when you're in traffic stops, can you use dogs to sniff? Yeah, you can. But remember, once it's over, the traffic stop, it's over. Done. Finished. And by the way, if it isn't over yet, you still may get into trouble if you've unreasonably prolonged the stop just to get the sniff. Now, that seems pretty easy to explain. It's a fairly bright line. And as soon as you get into this other, you know, just leaving it totally open, there's no check, really, on the not too much of one. Now, I'm putting that to you to get your response. So as I understand it, you're saying that, again, this is subject to a reasonableness analysis, that the officer can do a dog sniff and he can prolong the stop, either before or after. No, I was saying two parts. Part one, traffic stoppers, you can use a dog sniff when you stop, but not once the stop is over, period, unless you have cause or something. And during the stop, that's part two, you can't prolong it, but for a reason you have to do it all within a reasonable time, okay? You can't unreasonably prolong it to get your dog in. See? You tell them those two things. Once you've told them the two things, they've got it in their heads. When this is over, goodbye, dog. And it's not over, they better be careful not unreasonably to prolong it. Now, they'll understand that. And it will be both protecting what the Fourth Amendment protects and also, I think, giving them enough leeway to conduct a traffic stop. Well, so that makes the officer's sequencing decision entirely dispositive of whether the dog sniff can occur. If it happens before the stop, then it's fine, and after the stop, not. I think that does create arbitrary results from the perspective of the intrusion on the individual. But from the officer's perspective, I think there's an interest in officers having some leeway to sequence the traffic stop as the way it fits. Sotomayor, Justice Breyer has said this. What he's saying is you can't unreasonably prolong. You can't cold the person. Any measurable time that was allowed to get the dog. And yes, it has to do with the resources of the police department, but we can't keep bending the Fourth Amendment to the resources of law enforcement, particularly when this stop is not incidental to the purpose of the stop. It's purely to help the police get more criminals, yes, but then the Fourth Amendment becomes a useless piece of paper. Breyer, I didn't understand. Breyer, I think if I take what I said and take your answer, I have to say your answer is right. It's just a bad effect of my rule. And the virtue of the, you know, the two-part rule is what we said was the virtue of it. And it's like many cases, there just isn't much more to say. And you have to say, am I willing to run this? They might purposely change the sequence. They might. That's true. Somebody might. And I don't know what to do about that. The answer is I couldn't do anything about it. Well, we think there's a law enforcement interest in officers having some leeway to sequence the stop as they see fit. I mean, I was explaining the reasons that an officer might want to get the ticket contemporaneously with or before doing the dog. Sotomayor, suppose Ms. Andrews said, it's a hypothetical, the police pull somebody over and starts the process, and then the police officer says, you know, I'd like a cigarette break now. Cigarette probably takes about as long as the dog sniff took in this, and she just, you know, smokes a cigarette, and he goes back to work, all right? Would you say that that was unconstitutional prolongation of the stop? Well, an officer always has to be reasonably diligent. So at a certain point, if the officer takes breaks for no valid law enforcement reason, that is going to be dilatory, and so the stop would become unreasonable. Okay. So it would become unreasonable because there he was. He wasn't doing anything related to the mission of the stop. That's true if he gave the ticket and then said, I want you to stay while I take a cigarette break, or it's true if he did it before he gave the ticket, either way. I guess what I'm saying to you is I kind of think it's the same thing, is that once you've acknowledged that the dog sniff is something that's extraneous to the stop itself, it's obviously more helpful to the police than a cigarette break, but it's extraneous to the stop itself, then the same rules apply as if the police officer had just taken a moratorium on the stop in the middle in order to conduct his own business. Well, I think when a traffic stop is occurring, when an officer has someone stopped, we don't expect them to ignore potential evidence of criminal behavior. In fact, we think they'd be remiss if they did. And so we think that if the officer is able to do a dog sniff within a reasonable time and is still reasonably diligent with respect to the traffic stop violation, it ought to be constitutionally reasonable to do that. Oh, but then you really are saying because we have a reason to pull you over for a traffic stop, that gives us some extra time to start questioning you about other law enforcement-related things and to do other law enforcement-related business. And I never thought that that was the rule. I always thought is that once the objective basis, you know, for the stop dissipated, that was it. Well, I think if you take unrelated questioning, for instance, questioning about other, you know, other crimes, other criminal activity, I think there's a strong law enforcement interest in officers having some leeway to pursue this within a stop, as long as it's still reasonable. You told me, I think, that the officer could do that, at least that's what I understood your answer to be. That's right. The officer can do that, and I think it's important that the officer have some leeway so long as the overall time remains reasonable. Because if you think about questioning, if the officer starts with questions about where the person's going and that kind of thing, you know, we don't want officers to have to make finely-tuned judgments in the moment about whether the next question he wants to ask is sufficiently related to the traffic mission or not. That's why we think there needs to be some leeway for the officers to take some time to pursue the things that they observe, as long as they can do that within the amount of time that would be reasonable in a routine traffic stop, then we think it should be constitutionally reasonable to do that. And I would say that the – I think the reasonableness analysis, it allows courts to calibrate based on the nature and severity of the intrusion. Under Petitioner's view, even a 30-second extension of a traffic stop for a dog sniff would be unreasonable in every case. But if you have a reasonableness analysis. Kagan. Kagan. Kagan.        Kagan.     Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. So you would say there is evidence of free time for the police officers to investigate any crimes that they want, because they can do it all in the range of what you've decided is kind of the reasonable traffic stop. I don't think that's how we envision the analysis going, because the ultimate length of time has to be within the duration of a routine traffic stop that doesn't involve a dog sniff, and that's going to vary based on the circumstances. Because routine traffic stops, what's reasonable varies based on the circumstances. So what we think courts can do is they can look at what the officer actually did and they can look to stops involving similar circumstances, but not dog sniffs, and determine whether the officer was able to do the whole thing within a reasonable amount of time. I think that's essentially what the Court contemplated in Ornelas, that with these Fourth Amendment inquiries, they're fact-specific, but, you know, the harder cases will be appealed and there will start being guidelines, and courts can look to similar cases. We think the same thing can happen here, and indeed it already has happened with respect to unrelated questioning. There, the vast majority of the courts of appeals have said that you can extend a traffic stop for unrelated questioning, and the courts have looked to how much time did the questioning take, how long was the overall stop, and was the officer reasonably diligent with respect to the traffic mission. We think the same thing should happen here, whether the dog sniff is before or after the ticket. That's the only rule that avoids arbitrary results. If there are no further questions. Roberts, Mr. O'Connor, you have 6 minutes left. Thank you, Justice Breyer. It was much better than I said it. I think the point was well made. Breyer, what do you think about her response? Because I thought it was – I mean, she has an interesting point, I mean, an important point. She said, you know, the trouble with what I said, which, of course, you think is okay? She said it's – here's what's really going to happen, is that the police will think, gee, I'd just better be sure those dogs get here in time. And so what they'll do is tend to prolong the stops. And they'll want to be sure the dogs get there. And so if you really added all this up and thought about it, even experimentally, the class of stopped drivers where there are hunches is going to end up waiting longer, and being in custody, in a sense, longer than if we follow her approach. And her approach is just to say, hey, apply reasonableness across the board. A few extra minutes isn't that big a deal. I took her answer to be something like that, and I thought it was a – and it's a point. It's a point. So what do you think? Well, we hope that if you look at officers' diligence, there are things that will help enforce that. One is the community. Will the community start to accept 40-minute stops? Will the law enforcement officer himself expect that I'm going to stop being a police officer for two, three, four minutes when there's other things going on? I think that's very, very, very significant. Reasonableness. Reasonableness stops when you have the stop. And at that point in time, reasonableness has nothing more to do with it because the person should be released until there is another reason, another purpose for the stop, a reasonable, articulable suspicion, or you have consent, otherwise it is done. Here's the problem with the reasonableness. There was the statement that was made that it's not reasonable, doesn't give the officers enough time. We're not talking about the Fourth Amendment and the officers and open season on the road that the officers can do. We're talking about the Fourth Amendment and the protections that it has on the driver. You don't look at, well, it's only going to be a minute longer if you do it this way. The Fourth Amendment shuts it off when it is done. Alito, what did you say about the questioning that took place in this case? Where are you going? Are you going to buy a car someplace? All of that. Was that part of the mission? There's been a question. We didn't raise that. Your Honor, is that part of the mission? It is something that hasn't been challenged. It has been accepted as being part of the mission. I will tell you that's what the courts say, that it's been accepted as part of the mission. I have lots of questions before as to what is part of the mission and how far you go. That's for the courts to determine. My response, Your Honor to this Court, that's what I don't understand about your position, this definition of the mission. I can understand a definition that says just what you need to do to resolve the traffic violation, period. But if it includes other things like questioning about where are you going to buy a car and all that or doing a records check, then I really don't see why I want to know what the difference is between that and having a dog sniff. Well, the other things that are tasked and part of the traffic offense, where there's no doubt, and that could be questionable, but there's no doubt that a dog sniff is not part of the offense. That's collateral and it's nothing but an investigation. Now, the last thing that I would like to do, Justice Ginsburg, is answer your question as to the Eighth Circuit, and the Eighth Circuit did not make a decision as to the probable cause. But you do have a court that did. The trial-level court did make that decision. It made the decision that it was probable cause. Ginsburg. It was only a hunch, but that would ordinarily be reviewable by the court of appeals. The court of appeals didn't get to it. So it's an open question for the court of appeals. If it can go to the court of appeals. But this is you have the question that it was based on a hunch, but you give the discretion to the magistrate who heard the evidence. And the magistrate had a question as to the credibility of this witness. And if you have a question as to the credibility of the witness, then there is not sufficient facts to be able to make a determination as to whether, in fact, there's a probable cause. We would ask the court to adopt the finding that there is no probable cause. That is something that you can do as a reviewing court, because the facts have been established. We know that the judge had problems with the credibility of the witness. The facts that are left is not enough to establish any type of reasonable suspicion. What we do for judicial economy is you make the decision here now, because the Eighth Circuit would have to do the same thing. The Eighth Circuit would have to make a decision based on the magistrate's finding of lack of credibility, and that's what I would ask the courts to do today. Thank you. Roberts. Thank you, counsel. The case is submitted.